IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEBRASKA

| | |
|---|---|
| DANIEL R. LUCIANO, | |
| Plaintiff, | 8:17CV330 |
| vs. | |
| BERNICE BEOCKNER, and BEVERLY ANDERSON, | MEMORANDUM AND ORDER |
| Defendants. | |

This matter is before the court on its own motion. On December 14, 2017, the court entered a Memorandum and Order stating its concerns regarding whether subject-matter jurisdiction in this court is proper. (Filing No. 8.) The court permitted Plaintiff the opportunity "to file sufficient evidence with the court showing that the amount in controversy is greater than $75,000.00," the jurisdictional amount. (*Id*. at CM/ECF p. 6.) On February 9, 2018, Plaintiff filed a response (hereinafter "Response") to the court's December 14, 2017 Memorandum and Order. (Filing No. 11-1.)

In his Complaint, Plaintiff makes no specific reference to the amount of damages sought. Rather, for his claims of malicious prosecution and illegal eviction against the Defendants, he asks only for his "name and reputation to be restored, [damages for] mental anguish, stress, etc. [and] [t]o be reimbursed for all work [he has] done to the house that [the Defendants] illegally kicked me out of." (Filing No. 1 at CM/ECF p. 9.) As the court previously outlined in its initial review of the Complaint,

> [T]he supplemental documents provided by Plaintiff, and construed in his favor, show that Plaintiff had an agreement with [Defendants' sister Anna] Johnson to act as a "manager" of the property, providing maintenance and collecting rents, for which Plaintiff would receive a

credit of $325.00 per month equal to the amount of rent he owed to Johnson. (Filing No. 6 at CM/ECF pp. 39, 42.) Upon sale of the house, Plaintiff would also be reimbursed for his work. (Id. at CM/ECF p. 39.) In a letter to an insurer dated December 13, 2015, Plaintiff describes his losses as a result of Defendants' illegal eviction as the following:

> For me $ 325.00 X 36 months=11,700.00. Equivalent to 3yrs of rent as I paid monthly & 1 month was credited towards the rent instead of wage this was for my work as Manager! . . . Now Appliances & remodeling Caulking Cement, And sterilizing of Mold & Investment, altogether- $15, 000.00, That includes the work done when the renters left the premises filthy, & the dog poop & weeds & shrubs. . . . I will put an Estimate for all of the Legal files & Evidence Tapes, Fax Machine, Office equipment as well as my tires that I stored in the Garage. & 500.00 worth of food. And a Futon down stairs & 4 T.V.'s $500.00 estimate.

(*Id.* at CM/ECF p. 23.)

(Filing No. 8 at CM/ECF p. 5.) Liberally construed, the amount of damages identified by Plaintiff's Complaint and the supplements thereto is approximately $28,000.

In his Response, Plaintiff alleges that he was required to pay back $602.00 in benefits to the Nebraska Department of Health and Human Services related to his illegal eviction. (Filing No. 11-1 at CM/ECF p. 3.) Additionally, Plaintiff alleges the listing of Johnson's house for sale for $199,000.00 sometime after her death in May 2017 "justify [sic] [his] Actions" and along with "Mental anguish & Stress, Leaving me Homeless being Diabetic the figure is high no matter how it's calculated." (*Id.* at CM/ECF pp. 2, 4.) The remainder of Plaintiff's Response argues the merits of his underlying claims.

While Plaintiff cites the $199,000.00 listing price for the home he once shared with Johnson, he fails to state any facts or legal theories alleging why

Defendants should be liable to him for this amount. Plaintiff merely alleges that he had a contract with Johnson that said the Defendants "will never be able to kick [Plaintiff out] or evict [him] from the premises or [he] will sue them and replace them as Executors to Anna's Estate." (Filing No. 6 at CM/ECF p. 39.) However, none of the documents submitted by Plaintiff indicate that Johnson ever executed any document that would give him an interest in her property such that he would be entitled to its fair market value. At most, Plaintiff's evidence suggests that he would be entitled to the reasonable value of his services that he provided to Johnson in maintaining and improving her property. *See In re Estate of Jackson*, 583 N.W.2d 82, 89 (Neb. Ct. App. 1998) (citing *In re Estate of Baker*, 14 N.W.2d 585 (Neb. 1944)) ("The general rule is that if payment for services was to be made by a conveyance or devise of property by a decedent, but he or she refused or neglected to perform such in his or her lifetime and the amount to be paid was not agreed upon, then the person rendering the services is entitled to recover the reasonable value thereof."). As stated above, this amount falls far short of the $75,000 jurisdictional amount, and nothing in Plaintiff's Response suggests that Plaintiff's damages to his reputation and for mental anguish and stress would make up the difference in satisfying the amount in controversy requirement.

Thus, after carefully reviewing Plaintiff's Response, the court finds that the amount in controversy is far less than the $75,000.00 jurisdictional amount. For this reason, and for the reasons set forth in the court's December 14, 2017 Memorandum and Order, this matter is dismissed for lack of subject matter jurisdiction and without prejudice to reassertion in the appropriate state court.

IT IS THEREFORE ORDERED that:

1. The Complaint (filing no. 1) is dismissed without prejudice for lack of subject matter jurisdiction.

2. A separate judgment will be entered in accordance with this Memorandum and Order.

Dated this 17th day of October, 2018.

                                      BY THE COURT:

                                      s/ *Richard G. Kopf*
                                      Senior United States District Judge